# Thomas J. Osborne, Appellant, *v.* The Delaware County and Philadelphia Electric Railway Company.

*Damages for imposition of trolley road on highway—Evidence.*

Abutting landowners are justified in regarding a trolley railway a permanent structure, an additional and continuing servitude on the land within the highway and the road having been laid the only remedy is an action to obtain compensation for the injury inflicted.

On such trial evidence is properly admissible to prove the value of plaintiff's property before and after the construction of the defendant's road.

Argued Nov. 21, 1898.    Appeal, No. 214, Oct. T., 1897, by plaintiff, from judgment of C. P. Delaware Co., Dec. T., 1897, No. 48, on verdict for plaintiff.    Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Reversed. Opinion by W. W. PORTER, J.

Trespass.    Before CLAYTON, P. J.

It appears from the record that this suit was brought to recover damages sustained to plaintiff's property by reason of the construction of a trolley road near the curb line, the middle of the street being already occupied by the tracks of another road. The case turned on the measure of damages.    The plaintiff was prepared and offered to prove by his own testimony and that of real estate experts a depreciation in the value of his property due to the encroachment of defendant's road, and sought to show the amount of his damage by a comparison of the values before and after the encroachment.    These offers were rejected which forms the first and second assignments of error, plaintiff on trial being held to the proof of such special damage as he had directly sustained not affecting the value of the property.    Plaintiff submitted the following point, which was affirmed:

The act of assembly relating to street railway companies does not authorize the laying of a separate track on streets on which the tracks of another company are laid.    As Washington street, in front of the plaintiff's property, was already occupied by the tracks of the Chester and Media Electric Railway Company, the defendants' tracks thereon were laid without authority.

The court charged the jury in part as follows :

[If the construction of this second track has really inflicted a special injury upon his property he is entitled to have it.   Now you understand what we mean when we speak of special damage.   It means some damage that is not generally caused by the construction of the railway.] [4] . . . .

[Therefore it is, I say, a cold question of compensation for any special injury that Mr. Osborne's property may have suffered because of the building of this road, this second track, which, I may say, was almost necessary.   Now, what has he suffered?   That is the question.   It seems to me after all that the better way would have been to have taken the value of the property before and after, and I am not sure whether that would not have been the proper way, because the only element is the actual injury.   Sometimes there are other ways, such as the outrage, or the manner in which it has been taken which never enters into the assessment of damages, where the taking is lawful.   Unfortunately here, the taking was not authorized by law, and it is only by the presumed consent of Mr. Osborne that the road is there.   He, being presumed to have assented to it, it is there by virtue of that, and, therefore, it seems to me, after all, the proper way to assess the damages in this case would have been by taking the value before and after.   But upon the objection of the defendant, we have concluded to let it take the ordinary course of the assessment of damages for a wrongful act, where the measure is not the difference in value before and after, but the practice is to assess the damages according to the ordinary rules, but I am not sure that the ruling of the court is correct.   Nevertheless the defendant cannot object to it, not now, because when the offer was made to assess the damages in that way, it was not accepted.   Now, you are, of course, to assess the damages, as before stated, according to the evidence.   Now, what is the evidence?   Mr. Osborne says that he thinks that the damages he suffered amount to $1,200.   He is not very clear in giving the elements that make it up. He says there is some rise in the grade of the crown of the street by bringing the track that should have been on the grade on a level with the crown.   That is one.   The next is that it comes so near his curb line as to destroy the front for carriages and horses, carts, etc.   Now, at first blush, there may be some

damages for that, but it is not such as it would appear to be at
first face. The cars are not permitted by law to run against a
wagon if it was there. A man in that wagon has as much right
to the street as a man would have in a car. The car has the
right of way, that is all, and I will charge you as a matter of
law that if Mr. Osborne desired to haul anything into his prem-
ises it is his right to do it, taking no more time than is necessary,
and the car would not have the right to run against his wagon
while it was performing necessary services to his property.
Both have rights. It would not be right for him to have a
wagon stand upon the tracks for an unreasonable time so as to
materially interfere with the schedule of a car, but the car would
have no right to run against him while he was landing his fam-
ily or bringing anything upon his premises. He has the un-
doubted right to do that, and the car must stop and wait until
his team gets out of the way. So, after all, this injury is more
imaginary than real.] [5]

Verdict and judgment for plaintiff for $1.00. Plaintiff ap-
pealed.

*Errors assigned* among others were (1, 2) in rejecting testi-
mony and evidence offered by plaintiff tending to show the
value of the property as it stood unaffected by the construction
of the tracks of the Philadelphia and Delaware County Rail-
way Company. (4, 5) To portions of the general charge, re-
citing same.

*O. B. Dickinson,* for appellant.—When the present case was
tried the case of Thompson v. Traction Co., 181 Pa. 131, had
not been decided. The ruling in that case we understand to
be consonant with all the former cases and like them to the ef-
fect that where the structure is permanent and imposes an ad-
ditional and continuing servitude upon the land there at least
one measure of damages is the depreciation in the value of the
property: Williams v. Fulmer, 151 Pa. 405; Penna. R. Co. v.
Montgomery Co., 167 Pa. 62; Thomas v. Railway Co., 167 Pa.
120; May v. Traction Co., 167 Pa. 343; Heilman v. Railway
Co., 175 Pa. 188. Some of the above cases rule this and some
imply it.

*J. B. Hannum,* for appellee.—If the construction was lawful

the action cannot be maintained, because the road is built on a borough street: Lockhart v. Railway Co., 139 Pa. 419; Montgomery Co. Pass. Ry. v. Penna. R. Co., 167 Pa. 62.

Under the Act of May 14, 1889, P. L. 211, sec. 18, a street railway company may construct a crossing over another street railway in a curved line, and then prolong its tracks a reasonable distance along the street parallel with the other railway to reach the opposite point of crossing: Citizens Pass. Ry. Co. v. Ry., 164 Pa. 274; Braddock & Turtle Creek Ry. Co. v. Braddock Electric Ry. Co., 1 Dist. Rep. 44.

This is what this construction of the appellee on this street is. A crossing of one railroad over another. It is identical with the crossing in the case of Citizens Ry. v. Ry., supra.

It is true the above cases were between railway companies, but can any one else complain? We say no, for if it was not for the act of May 14, 1889, a municipality could grant permission to build as many street railroads as it saw fit without any right of action accruing to the property owners: Booth on St. Rys. p. 158; Homestead St. Ry. Co. v. Pittsburg Electric Ry. Co., 166 Pa. 162; 23 Am. & Eng. Ency. of Law, 947, 948, 949; 2 Dillon on Mun. Corp. sec. 567, Cooley on Const. Lim. *556.

Opinion by William W. Porter, J., March 23, 1899:

This is an action for damages brought by a property owner against a street railway company for constructing a track on a highway opposite the plaintiff's property without his consent.

The learned trial judge, both in his rulings upon the evidence and in the views expressed in his charge, was evidently in doubt throughout the trial as to the proper measure of damages to be applied. At an early stage of the trial, he excluded the testimony of persons (having knowledge of real estate values in the neighborhood), offered by the plaintiff to prove the value of the plaintiff's property before and after the construction of the defendant's road. Subsequently, he expressed in his charge the opinion that he should have admitted the testimony, and the case went to the jury, in part, on the question of damages on the basis of the difference in value before and after the building of the railway. The plaintiff, however, lost the effect of the testimony which he offered to present. We are of opinion that

the learned judge erred in not admitting it.  It was certainly one method of ascertaining what damage the plaintiff had suffered.  The opinion of the Supreme Court, in Thompson v. Traction Co., 181 Pa. 131, was not reported at the time of the trial of this case.  It was there said, by Mr. Justice McCollum (upon facts strikingly similar to those of the case before us) : "The plaintiffs were justified in regarding the railway as a permanent structure, an additional and continuing servitude on their land within the highway.  They could not compel a change of grade or location, nor remove the embankment which interfered with access to their lot and was necessary to the support and operation of the railway.  Their only remedy was an action to obtain compensation for the injury inflicted : Penna. R. Co. v. Montgomery County Passenger Ry., 167 Pa. 62.  No good reason appears for holding that the rulings and instructions in regard to the measure of compensation were erroneous."

Referring to the rulings thus affirmed, we find that the trial judge in that case applied the rule of difference in value before and after taking, and further, permitted testimony to be introduced showing the cost of restoring the property injured to the condition in which it was before the injury, restricting the application of the testimony, however, by charging that it amounted to nothing if the property was not injured in its market value.  This authority is a guide for the retrial of this case.

We, therefore, sustain the first and second assignments and so much of the fifth assignment as shows the charge to be in conflict with the views herein expressed.

The third assignment is founded on the exclusion of the testimony of the witness, Gray.  The exclusion was a sound ruling.  The question, upon which the final ruling was had, asked the witness to say, whether in his judgment the plaintiff's property had been damaged, and if so, how much and to what extent.  It was not to draw out any fact which might aid the jury in the performance of their duty, but a request to express an opinion without showing that the witness had any facts peculiarly within his knowledge to give his opinion value as testimony.

The fourth assignment being a small excerpt from the charge, severed from the context, does not disclose inherent error, and is not sustained.

The suggestion of counsel for defendant that the plaintiff's action cannot be maintained because the construction of the defendant's railway in front of the plaintiff's property was but a crossing of tracks within a borough by permission, cannot be considered. It in no way arises as the case is now presented.

The judgment of the court below is reversed, and a venire facias de novo is awarded.